Date signed November 09, 2011



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| LIGHT FOOT GROUP LLC | : | Case No. 11-17945PM |
| | : | |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

This case filed under Chapter 11 on April 15, 2011 is before the court on the Joint Motion of Old Line Bank and PNC Bank, N.A., for a declaration that the Debtor is a single asset real estate entity subject to section 362(d)(3) of the Bankruptcy Code. Debtor opposed the Motion, and at the conclusion of a hearing, at which Debtor's manager testified, the court reserved decision.[1]

Single asset real estate ("SARE") is a defined term under the Bankruptcy Code:

**11 U.S.C. § 101. Definitions**

In this title the following definitions shall apply:

\*          \*          \*          \*          \*

(51B) The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4

---

[1] In a proceeding where relief is sought from the automatic stay of 11 U.S.C. § 362(a), the movant has the burden of proof on the issue of the debtor's equity in the property, and the debtor has the burden of proof as to all other issues. 11 U.S.C. § 362(g).

residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

The significance of the designation is that if a debtor's property is found to fall within the definition, 11 U.S.C. § 362(d)(3) imposes an additional basis for relief from the automatic stay. That section provides:

**11 U.S.C. 362.  Automatic stay**

362(d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>       *          *          *          *          *
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later–
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>> (B) the debtor has commenced monthly payments that–
>>> (I) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate . . . .

As explained in the Fifth Circuit opinion in *In re Scotia Pacific Co. LLC*, 508 F.3d 214, 220 (CA5 2007):

> Three requirements emerge from this definition which must all be met for a debtor to be considered a SARE debtor: (1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto. If a debtor fails to meet any prong, it is not a SARE.

The purpose of the SARE designation was described in the case of *In re Philmont Development Co.*, 181 B.R. 220, 223 (BC E.D. Pa. 1995):

> Sections 101(51B) and 362(d)(3) were recently enacted as part of the Bankruptcy Reform Act of 1994. The Court has not identified any decisions which fully discuss section 101(51B) or 362(d)(3) in this context. Since the legislative history of section 101(51B) and 362(d)(3) is not illuminating, the Court relies primarily on its own interpretation of the seemingly plain language of the statute in interpreting the phrase "single asset real estate." That is not to say, however, that the Court is writing on a blank slate. The terms single asset case, or single asset real estate case, are well-known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market, much like the instant Debtors, rather than businesses involving manufacturing, sales or services. *See In re Mayer Pollock Steel Corp.*, 174 B.R. 414, 422–23 (Bankr.E.D.Pa.1994). The drafters of sections of 101(51B) and 362(d)(3) were aware of the colloquial use of the phrase "single asset real estate," and the Court believes that their intention in using that phrase grew out of its previous colloquial and common usage. Moreover, the drafters of sections 101(51B) and 362(d)(3) were obviously attempting to implement a mechanism by which a species of cases, "single asset real estate" Chapter 11 cases, would be forced to proceed on an expedited track. Other Chapter 11 debtors do not face the loss of the protections of the automatic stay for failure to file a plan of reorganization within a specified time period. Accordingly, the scope of real estate enterprises that fall within the purview of section 101(51B) is significant. Determining the scope of section 101(51B) is the principal issue in the instant case.

The real property that is the subject of the Motion before the court consists of five tracts of land. There are 17 residential units amongst these tracts that generate substantially all of Debtor's gross income. Some of the rental units are single family homes, others are within two four-unit buildings, and still others are mobile homes. As described in Debtor's Amended Disclosure Statement filed October 25, 2011, Tract 1 consists of 16.3 acres and is known as Pumphouse Lane, upon which there are five single family homes and four mobile homes. Tract 2 contains a single family home with four rental units. Tracts 3 and 4 consist of 91 acres of vacant land. Tract 5, known as Dots Lane, contains one building with four rental units. The properties are adjacent to one another. No business is presently conducted on these premises other than the rental of residential units. This description of its business is consistent with Debtor's original Statement of Financial Affairs filed May 10, 2011, and its Amended Statement of Financial Affairs filed May 23, 2011, where in response to Question No. 18, "Nature, location and name of business," Debtor states that it is engaged in business as a rental company.

Debtor urges that there is no common use of the properties both present and prospective

and that it has independent plans for the parcels. In describing the means of funding its Plan of Reorganization, however, Debtor's Amended Disclosure Statement, at Page 19, only discusses continued revenues to be derived from operations of existing leases and new leases; cash infusions from equity interests; and liquidation. The Disclosure Statement does not discuss income from any other activities. The cash flow projections attached to the Disclosure Statement in order to demonstrate feasibility do not reflect or project income from any source other than rents.  Of these sources of revenues for funding its Plan, only the generation of rental income can be considered the business of this Debtor, and the court finds this activity to be a single project centered on operation of Debtor's real property as a single asset.

      Debtor argues that, "The existence of a tract which contains nine single family residential homes, none of which by testimony have four or more residential units, disqualifies the case from such a designation." *See* Debtor's "Supplement To Answer" filed September 13, 2011, Page 2.  The court disagrees with that reading of the exception - that the absence of any one building with more than four residential units takes Debtor's case out of the definition. Debtor's argument ignores the phrase, "real property constituting a single property or project."  While it may be that no single building on Debtor's property contains four or more units, the project of generating rental income in order to fund Debtor's Plan obviously does.

      Debtor also argues that the work of its affiliate, Winters Sheet Metal, Inc., in doing various repairs and installation of HVAC systems, can exclude a property or properties from single asset real estate status. The court disagrees, as these tasks - as testified to by Mr. James Winters - are performed for the tenants and as such fulfill Debtor's obligations as landlord, assist in the operation of Debtor's rental business, and are incidental to that business.  Debtor's cash flow statements reflect no income from this activity. In support of Debtor's proposition, Debtor cites the case of *In re Whispering Pines Estates, Inc*., 341 B.R. 134, 136 (BC N.H. 2006).  That case involved operation of an 89-room hotel that the court found is "sufficiently active in nature to constitute a business other than the mere operation of property."  341 B.R. at 136 (*citing In re CBJ Dev*., 202 B.R. 467, 472 (B.A.P. 9th Cir. 1996)).  In reaching this decision, the court in *Whispering Pines* described the day-to-day operation of the debtor in serving breakfast, maintaining a swimming pool and common areas, providing Internet service, and operating room-cleaning services.  Debtor's reliance upon the case of *In re Kkemko, Inc.*, 181 B.R. 47 (BC S.D. Ohio 1995) is similarly ill-founded.  *Kkemko* dealt with the operation of a marina with slips for 270 boats where the debtor provided repair services, winterizing and dry land storage,

showers, and provisions for boaters.  These other services produced revenue for the debtor.  Likewise, the case of *In re Scotia Development, LLC*, 375 B.R. 764 (BC S.D. Tex. 2007) provides no support for Debtor's position.  *Scotia* involved a debtor whose income derived from harvesting timber on 200,000 acres of land that it owned as well as harvesting timber on land owned by third parties that the debtor had the right to harvest.  The properties were located in nine different watersheds, each governed by a different regulatory authority.  The court found that the debtor operated a substantial commercial business on the property, using the active-versus-passive inquiry into the nature of the revenue generation as set out in *In re Club Golf Partners, LP*, *2 2007 WL 1176010 (BC S.D. Tex. 2007).  *Scotia* cited with approval the interpretation in *Club Golf Partners:* "Real property that, for the generation of revenues, requires the active, day-to-day employment of workers and managers other than or additional to the principals of the debtor, and that would not generate substantial revenue without such labor and efforts, should not be regarded as single asset real estate."  375 B.R. at 777, quoting *Club Golf Partners*.  The work done by the related entity, Winters Sheet Metal, does not convert the nature of this Debtor's operation from one of passive rental collection activity.  Similarly, the fact that Debtor's residential rental business takes place over five tracts of land acquired at different times does not change the nature of the case.  *See In re Pensignorkay, Inc.* 204 B.R. 676, 681-682 (BC E.D. Pa. 1997); *In re Webb Mountain*, LLC, *4, 2008 WL 656271 (BC E.D. Tenn. 2008).  Unlike the two properties described in *In re McGreals*, 201 B.R. 736, 742-743 (BC E.D. Pa. 1996), one of which was a refrigerated manufacturing plant, the other undeveloped land that was separately encumbered, the parcels here are being operated as a single project.

      For the foregoing reasons, and upon consideration of all the facts and circumstances presented, the court finds Debtor's property to be "single asset real estate" as defined in the Bankruptcy Code.  An appropriate order will be entered.

cc:
John D. Burns, Esq., 6303 Ivy Lane, Suite 102, Greenbelt, Md 20770
Marc Shach, Esq., Four Reservoir Circle, Baltimore, MD 21208
Leah Lehrman, Esq.,  6411 Ivy Lane, Suite 200, Greenbelt, MD 20770
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770
Creditors/parties in interest

**End of Memorandum**